UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

ANDRE TONY WALLS,

Plaintiff,

v.

DEANNA HILLER, MICHAEL ISSACSON, and FEDERAL BUREAU OF PRISONS,

Defendants.

---

Civil File No. 00-413 (RHK/AJB)

**REPORT AND RECOMMENDATION**

The above-entitled matter is before the undersigned Magistrate Judge of the District Court on Defendants' motion to dismiss this action pursuant to Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 18.) Plaintiff has opposed Defendant's motion and filed his own separate motion seeking summary judgment in his favor. (Docket Nos. 24 and 25.) The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, it will be recommended that Defendants' motion be granted, that Plaintiff's motion be denied, and that this action be DISMISSED WITH PREJUDICE.

## I. BACKGROUND[1]

In 1994, Plaintiff was convicted in the U.S. District Court for the Eastern District of Wisconsin for two federal criminal offenses: (1) receiving and possessing a stolen vehicle

---

[1] The Court's summary of the historical background of this case is based primarily on Defendants' submissions in support of their motion for summary judgment. (Docket Nos. 19-22.) Plaintiff has indicated that he disagrees with Defendants' recitation of the relevant facts only in one regard, which is specifically noted below.

FILED JUN 20 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD_______
DEPUTY CLERK_______

which traveled in interstate commerce, and (2) possession of a firearm by a convicted felon. He was sentenced to a total of ten years in federal prison, to be followed by a three-year term of supervised release. Plaintiff is presently serving his sentence at the Federal Correctional Institution in Waseca, Minnesota, ("FCI-Waseca").

When Plaintiff first began to serve his federal prison sentence, the Bureau of Prisons, ("BOP"), reviewed his background, including his criminal record, to determine his proper security classification. The BOP conducts such a review for each new federal prisoner to determine appropriate housing arrangements. Plaintiff was given a security classification identified as "greatest severity," and he was sent to the Federal Correctional Institution in Oxford, Wisconsin.

In 1995, Plaintiff was transferred to the Federal Correctional Institution in Milan, Michigan, ("FCI-Milan"). After he arrived there, prison officials reviewed his security classification and decided to make it less restrictive. His security classification was upgraded from "greatest severity" to the more favorable "moderate severity." Based on Plaintiff's revised security classification, prison officials at FCI-Milan recommended that he should be sent to the Federal Prison Camp at Oxford, Wisconsin, ("FPC-Oxford") -- a less secure prison facility that would be closer to his home.

However, the BOP's regional office, which apparently is responsible for making final decisions on prison transfers, rejected the recommendation from FCI-Milan. The regional office "re-scored" Plaintiff's security classification, and concluded that he should, in fact, be assigned the "greatest severity" level, rather than the "moderate severity" level used

at FCI-Milan.[2] The BOP regional office also directed that Plaintiff be transferred to FCI-Waseca, (a "low" security facility), rather than to FPC-Oxford, (a less restrictive "minimum" security facility). When Plaintiff arrived at FCI-Waseca in January 1997, his security classification was re-scored again, and it was kept at the "greatest severity" level.

In May 1997, Plaintiff's security classification level was re-scored once more – this time by Defendants Deanna Hiller, who was a Case Manager Trainee at FCI-Waseca, and Michael Isaacson, a Unit Manager at FCI-Waseca. Hiller and Isaacson both agreed that Plaintiff's security classification should remain at the "greatest severity" level.

Plaintiff's "greatest severity" security classification is based on an incident that occurred several years before the federal crimes that led to his current incarceration. On June 17, 1989, Plaintiff allegedly was involved in a gunfight in Milwaukee, Wisconsin, which resulted in the death of an innocent bystander. Plaintiff acknowledged that he had some involvement in the shooting, and he was charged with a state homicide offense. However, the charges against him were ultimately dismissed, and he was never convicted of any crime in connection with the incident. Nevertheless, it is that incident -- and apparently that incident alone -- that has caused Plaintiff's security classification to be downgraded from "moderate severity" to "greatest severity." As a result of his downgraded security classification, Plaintiff is not currently eligible for a transfer to FPC-Oxford, which

---

[2] Defendants contend that the regional office "corrected" a classification error made by prison officials at FCI-Milan. Plaintiff disagrees, contending that the security classification assigned to him at FCI-Milan was the correct one, and that the regional office erred by changing it.

is where he would prefer to be, because it is a less restrictive prison environment, and it is closer to his home and family.

On February 25, 2000, Plaintiff commenced the present lawsuit by filing a self-styled complaint brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). He claims that Defendants Hiller, Isaacson and the BOP violated his rights under Fifth, Sixth, Eighth and Thirteenth Amendments to the federal Constitution, by punishing him for a crime (the Milwaukee homicide) for which he was never convicted. Plaintiff is seeking a judgment that would (a) change his security classification from "greatest severity" to "moderate severity," (b) cause him to be transferred to a minimum security prison that is close to his home, (presumably FPC-Oxford), (c) award him compensatory and punitive damages, and (d) prohibit the BOP in the future from "penaliz[ing]" prisoners "in any way" for criminal conduct that has not resulted in a criminal conviction.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56 (c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). In satisfying this burden, however, the non-moving party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56 (e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

## III. DISCUSSION

### A. Fifth Amendment "Due Process" Claim

Plaintiff initially contends that Defendants violated his Fifth Amendment rights – presumably his right to due process. He apparently believes that Defendants could not give him a lower security classification, and thereby deprive him of the benefits of a higher classification (including a less restrictive prison environment), without affording him the protections of due process.

To sustain a due process claim, a prisoner must show that he has been deprived of some constitutionally protected property or liberty interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In this case, Plaintiff has not alleged that Defendants deprived him of any property interest, so he must be claiming that he has been deprived

of some constitutionally protected liberty interest. More specifically, he must be claiming that he has a protected liberty interest in obtaining and retaining the benefits that accompany a "moderate severity" security classification, and that he cannot be deprived of those benefits without due process.

In prisoner cases, a liberty interest will be found, and the protections of due process will therefore come into play, only where a prisoner has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In other words, a prisoner's due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996) (emphasis added).

Here, Plaintiff does not have a viable due process claim because he is unable to show that he has suffered the type of dramatic or unusual hardship that might implicate a protected liberty interest. While Plaintiff undoubtedly views his lower security classification, and the accompanying loss of benefits and privileges, as a grievous injury, these matters do not constitute the type of unusual hardship that will support an actionable due process claim. Prisoners are frequently transferred from one institution to another, they endure varying degrees of restrictions on their freedom of movement during their prison terms, and they gain and lose all types of privileges for all types of different reasons. Those are normal aspects of prison life; they are not considered to be "atypical and significant hardship[s]" or "dramatic departure[s]" from the ordinary conditions of a

prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997).

Changes in housing assignments, in particular, are a normal part of prison life. Prisoners have no right to be assigned to, or remain in, any particular prison facility. Olim v. Wakinekona, 461 U.S. 238, 250 (1983), (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'"), quoting Meachum v. Fano, 427 U.S. 215, 228 (1976). While Plaintiff may be unhappy with his current prison home, his transfer to FCI-Waseca cannot be viewed as the type of dramatic departure from ordinary prison life that would give rise to a protected liberty interest under Sandin. See Freitas, 109 F.3d at 1337 (a prisoner has no liberty interest in remaining in a less restrictive prison environment, so he is not entitled to due process before being transferred to a more restrictive institution). Because Plaintiff has no constitutionally protected liberty interest in remaining in any particular prison environment, he is not entitled to due process when the BOP determines (or redetermines) his prison housing assignment.

Moreover, Plaintiff has failed to identify any other consequence of his security classification that could be viewed as an atypical or significant hardship, or dramatic departure from the ordinary incidents of prison life, which would implicate a constitutionally protected liberty interest. Because his security classification has not deprived him of any protected liberty interest, he was not entitled to the protections of due process during the course of the classification procedure. Thus, he has no viable Fifth Amendment claim.[3]

---

[3] In James v. Reno, 39 F.Supp.2d 37 (D.D.C. 1999), aff'd 1999 WL 615084 (D.C.Cir. 1999), a federal prisoner presented a due process claim that was nearly identical to the one presented here. The Court rejected the claim, holding that "Plaintiff has no

B. Sixth Amendment Claim

Plaintiff is also attempting to maintain a Bivens claim based on the Sixth Amendment to the Constitution, which provides that:

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." (Emphasis added.)

Plaintiff explains his Sixth Amendment claim as follows:

> "Plaintiff has been prosecuted by Defendants, he had no trial, no jury, no Counsel, and has not been convicted of the crime the Defendants punish him for, [namely the 1989 Milwaukee homicide]. The Defendants accuse and prosecute, leaving the Petitioner with no recourse."

(Plaintiff's "Traverse," [Docket No. 25], p. 4.)

Plaintiff's Sixth Amendment claim fails because that Amendment applies only to "criminal prosecutions." United States v. Carlson, 697 F.2d 231, 235 (8th Cir. 1983) ("'the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution'"), quoting United States v. Marion, 404 U.S. 307, 313 (1971). None of the Defendants has attempted to prosecute Plaintiff for the Milwaukee homicide, or any other crime. Defendants have not charged Plaintiff with any new crime, they have not added any new conviction to his criminal record, and they have not imposed any new sentence.

---

liberty interest in his security classification, [citation omitted], or in his place of confinement, [citing Olim]." Id. at 40. See also Moody v. Daggett, 429 U.S. 78, 88, n. 9 (1976) (no due process protections are required in connection with prisoner classifications).

Simply put, the security classification process at issue here is not a criminal prosecution. It is merely an administrative procedure that the BOP uses to help it fulfill its primary responsibility, which is to maintain custody of individuals who are given federal prison sentences. Because the security classification process is not a criminal prosecution, the Sixth Amendment has no bearing on that process. Therefore, Plaintiff cannot sustain a Sixth Amendment claim against Defendants.

C. Eighth Amendment Claim

Plaintiff also has no viable Eighth Amendment claim. To sustain such a claim, a prisoner must show that prison officials were aware of some particular "excessive risk" to his health or safety, and knowingly and deliberately disregarded that risk. Williams v. Delo, 49 F.3d 442, 446 (8th Cir. 1995). A prisoner-plaintiff must prove that the parties being sued caused him harm by deliberately disregarding his "serious medical needs," (Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)), by forcing him to live in conditions that do not meet the minimum standards of a civilized society, (Rhodes v. Chapman, 452 U.S. 337, 347 (1981)), by using excessive physical force against him, (Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)), or by deliberately exposing him to an obvious risk of physical harm, (Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Nothing in any of Plaintiff's submissions suggests that he can make any such showing here.

Plaintiff has not offered any evidence, (or even made any allegations), suggesting that any of the named Defendants have harmed him by deliberately ignoring his health or safety needs. See James, 39 F.Supp.2d at 41 (rejecting federal prisoner's Eighth Amendment claim for alleged "emotional pain and suffering" caused by a prisoner

classification that kept him from moving to a lower security facility that was closer to his family). His Eighth Amendment claim must therefore be dismissed.

D. Thirteenth Amendment Claim

Finally, Plaintiff claims that Defendants violated his Thirteenth Amendment rights by assigning him a lower security classification. Plaintiff contends that he "suffers both slavery and involuntary servitude for a crime he was never conflicted of [sic]." (Plaintiff's "Traverse," p. 5.) That is simply not the case.

Plaintiff is presently incarcerated as punishment for two crimes for which he was lawfully convicted -- (1) receiving and possessing a stolen vehicle which traveled in interstate commerce, and (2) possession of a firearm by a convicted felon. Plaintiff's incarceration for those two crimes is not barred by the Thirteenth Amendment, because imprisonment as "punishment for crime" is expressly excepted from the Amendment's general prohibition against slavery and involuntary servitude.[4] Because Petitioner has been convicted of two federal crimes, and he is being held in custody as punishment for those two criminal convictions alone, his present incarceration does not violate the Thirteenth Amendment.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes, as a matter of law, that Plaintiff cannot be granted any relief on any of the Bivens claims that he is attempting to

---

[4] The Thirteenth Amendment provides that –

> "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." (Emphasis added.)

maintain in this case. It will therefore be recommended that Defendants' motion to dismiss or for summary judgment, (Docket No. 18), be granted, and that Plaintiff's motion for summary judgment, (Docket No. 24), be denied.[5]

**V. RECOMMENDATION**

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion To Dismiss Or In The Alternative For Summary Judgment, (Docket No. 18), be GRANTED;

2. Plaintiff's Motion For Summary Judgment, (Docket No. 24), be DENIED; and

3. This action be dismissed with prejudice.

Dated: June 20th, 2001

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[5] Because Plaintiff has no viable cause of action, there is no need to address Defendants' contentions that (a) Defendants Hiller and Isaacson cannot be sued in their official capacities, (b) Defendants Hiller and Isaacson are entitled to qualified immunity, (c) Plaintiff failed to exhaust his administrative remedies, and (d) the BOP is entitled to rely upon and enforce its own administrative regulations.